THE MEMNON.

AFRICAN STEAMSHIP CO. v. CUNEY.

(Circuit Court of Appeals, Fifth Circuit. June 12, 1894.)

No. 233.

1. SHIPPING—STEVEDORE'S COMPENSATION FOR BREAKING OUT CARGO ON FIRE.
   A stevedore loaded and stowed a cargo of cotton, under a contract, for 50 cents a bale. On the cargo taking fire, he rendered services in break-

ing out a large part of the cargo, the hold being filled with smoke, and the cotton either on fire or saturated with water. *Held* that, in the absence of an agreement as to the amount of the compensation therefor, he was entitled to more than the ordinary wages, and an award of 75 cents a bale, justified by evidence as to the custom of the port, should be sustained.

**2.** PAYMENT—APPLICATION BY DEBTOR.

An agent of two vessels, making payments at intervals to a stevedore for work on both progressing at the same time, kept their accounts separate, stating in the receipts taken and in the checks given the vessel on whose account payment was made. *Held*, that one of the vessels was not liable to the stevedore in a suit in rem for more than the amount due from her on such appropriation of payments by the agent.

Appeal from a Decree in Admiralty of the District Court of the United States for the Eastern District of Texas.

This was a libel by N. W. Cuney against the steamship Memnon (the African Steamship Company, claimant), for stevedore's services in loading and stowing, and in breaking out and restowing cargo. The district court rendered a decree for libelant. Claimant appealed.

W. B. Denson, for appellant.

R. S. Wheeler, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge. N. W. Cuney, the libelant, a stevedore of Galveston, had loaded and stowed the cargo of the steamship Memnon, consisting of bales of cotton, under a contract of 50 cents a bale for the cotton stowed in the harbor of Galveston, and 5 cents a bale extra for that stowed outside. Upon her attempting to put to sea, it was found that her draught of water was so great that it was feared that it would be necessary to break out and unload a portion of the cargo, so as to float her over the bar. No arrangement, contract, or agreement had been made for this, but, after waiting four days, the libelant was requested by the ship's agent to have his men ready the next morning to break out what cargo was necessary. The ship was then lying outside at the bar, and, early on the morning of October 10th, was discovered to have fire in the cargo, and was brought to the dock. The city fire department was soon on hand, and commenced playing water into the holds and onto the burning cotton, and the gang of hands of the libelant were at once put to work breaking it out. The libelant himself was not there at that time, but Scott, his foreman, was in charge of the gang. They worked about four days breaking out 1,456 bales, when it was reloaded, and the vessel prepared for sea. Upon the libelant's presenting his bills for loading, breaking out, and restowing the cargo, objection was made to the item of 75 cents a bale charged for the breaking out, as well as the form of the bill, it being all against the vessel, instead of a portion of it, that caused by the fire, being against the vessel in general average, as the agent desired it, and he declined to pay it, when the libelant

filed his libel, and had the vessel attached. Upon a hearing, judgment was given upon the libel for the full amount, and an appeal was taken to this court.

The claimant alleged in the answer that a contract was made with Scott by Spencer in behalf of the ship for 40 cents an hour for the men at the time they commenced discharging cargo. Whether or not such a contract was made is one of the important questions in the case, as the libelant claims in his libel upon a contract of 75 cents a bale, as well as upon a quantum meruit and custom of the port, but presents no evidence whatever to support the allegations of a contract made. In regard to the contract for 40 cents per hour, we are not satisfied from the evidence that there was such agreement or contract to perform the service for that sum. The agent's accounts show that he did not so consider it, as, in addition to the 40 cents per hour allowed for the men, he credited the foreman with $10 a day, and the stevedore with a profit of 10 cents a bale upon the cotton broken out. It is not claimed that there was any contract for such allowance, and, whether reasonable and just or not, it was based upon no agreement, and shows conclusively to our minds that it was not considered by the agent that there was one covering the entire service. The men were not employed themselves; they were already in the employ of the libelant; and it does not appear that the foreman, Scott, had authority to make any contract or agreement for them or for the libelant. Scott says that there was no contract made. The libelant says that Mr. Spencer asked him that afternoon what he was going to charge. Unquestionably, there was some conversation regarding the rate to be charged, and Mr. Spencer probably considered that a contract had been made at longshoremen's wages, when Scott only was intending to tell him what such wages were,—what the stevedore was paying. We cannot find, therefore, that the ideas and intentions of the contracting parties at any time agreed upon any amount, and the questions of the usual custom and quantum meruit demand examination. The work was not ordinary longshoremen's work. The cargo of the ship was on fire, the hold filled with smoke, and the cotton either on fire or saturated with water. The circumstances rendered the service entitled to a higher rate of compensation than the common every-day wages, and we are satisfied that the evidence as to the custom of the port and the usual amounts paid on such occasions justifies the amount claimed by the libelant, as being a reasonable compensation, and, upon this branch of the case, consider that the decree below should be sustained.

But there is another question. At the time the libelant was loading this steamship, the Memnon, he was also loading another steamship, the Sirona, under a contract and agreement with the same agent. The work was progressing upon the two vessels at the same time, and payments on account of the two vessels made at intervals. The agent, in making these payments, kept the accounts of the two vessels separate, stating in the receipts taken the vessel on whose account the payment was made, and on the margin of the checks given in payment, in some instances at

least, the different amounts. to be credited to each vessel. Such receipts show that, according to the accounts of the agent, there had been paid upon account of the Memnon, at the time of the suit, $1,700. The libelant, on the other hand, had paid no atten- tion to the appropriation of the payments by the ship's agent to the different vessels, but had credited the entire amount received, except $200, to the Sirona, the first vessel leaving, overpaying her account $93.50, making, with the $200 excepted from the Sirona's account, $293.50 only which he credited to the account of the Memnon. The result of this difference in keeping accounts has been to cause the libelant to bring suit against the Memnon for the entire amount he claimed to be due him from both vessels.

There is no question of the right of the debtor to appropriate his payments to the several accounts of his debts as he sees fit, and more especially should this be recognized in case of an agent acting for several parties, and who is handling different funds. Had no appropriation been made by the party whose duty it was to pay, the one receiving would have had full power to make such applica- tion as would be to his interest; but that such appropriation was made in this case is plain from the forms of the receipts taken and the checks which had passed through the hands of the libelant, and bear his indorsement. This is an action in rem, and, no matter what the equities may be between the libelant and the agent of the steamships, this vessel cannot be held for anything not shown to be due by her. The amounts paid by her agent on her account must be presumed to have been paid from the funds of her owners, and ample notice was given the libelant at the time of his receiving them. Accepting as correct the respondent's statement of the number of bales handled and the manner and place of their loading, which very nearly corresponds with libelant's accounts, but allow- ing 75 cents a bale for breaking out at the time of the fire, as claimed in the libel, and deducting the $1,700 shown to have been paid on account of the vessel, we find due the libelant, at the com- mencement of this suit, $4,590.10. Of this amount, claimant ad- mitted that $4,122.10 was due, and offered to pay this amount, upon condition that the suit be dismissed. While he may have been justified in refusing to pay the full amount claimed in the libel, and submitting such question to judicial determination, he is enti- tled to no greater advantages regarding interest or costs by mak- ing such a tender on account of exacting such condition than if it had not been made; and, although the amount admitted to be due was deposited in the registry of the court, it was of no ad- vantage to the libelant, and should not affect his rights. The ques- tion of costs, and very largely of interest, is within the discretion of the court in admiralty practice. In this case, costs having been decreed for the libelant in the court below, such costs will be taxed in his behalf; but, the claimant being fully justified in his appeal to this court, on account of judgment pronounced against the Memnon, a portion of which amount properly belonged to the Si- rona, the costs of this court will be taxed against the libelant.

We are therefore of the opinion that this cause should be re-

manded to the court below, with instructions to set aside the decree thereinbefore granted, and enter a decree in favor of the libelant for $4,590.10, with interest from the 27th day of November, 1893, the date of judicial demand, at the rate of 6 per cent. per annum, and the costs in that court incurred; and that the $4,122.10, now on deposit in the registry of the court in this cause, less the costs of such deposit, be applied in part payment thereof; and that libelant have judgment for any balance then remaining unpaid against the African Steamship Company, composed of Elder, Dempster & Co., and Thomas H. Sweeney and George Sealy, sureties upon its stipulation, and such judgment be without prejudice to the rights of N. W. Cuney, libelant herein, against the steamship Sirona, W. W. Wilson, agent, or any one else on account of any amount that may be due him from said steamship; and that the costs herein be taxed against the appellee herein; and it is so ordered.